882 So.2d 969 (2004)
Donald David DILLBECK, Appellant,
v.
STATE of Florida, Appellee.
Donald David Dillbeck, Petitioner,
v.
James V. Crosby, Jr., Respondent.
Nos. SC02-2044, SC03-1123.
Supreme Court of Florida.
August 26, 2004.
*970 George W. Blow, III, Live Oak, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Donald David Dillbeck, an inmate under sentence of death, appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. He also petitions this Court for a writ of habeas corpus.[1] For the reasons that follow, we affirm the circuit court's denial of one of Dillbeck's ineffective assistance of counsel claims, but we remand the remaining claims and instruct the circuit court to make findings of fact and conclusions of law as required by Florida Rule of Criminal Procedure 3.850(d). We also deny Dillbeck's petition for a writ of habeas corpus.

I. INTRODUCTION
Dillbeck was convicted of first-degree murder, armed robbery, and armed burglary.[2] In accordance with the jury's eight-to-four recommendation, the trial judge sentenced Dillbeck to death for the murder conviction, finding five aggravating circumstances,[3] one statutory mitigating circumstance,[4] and several nonstatutory mitigating circumstances.[5] Dillbeck also *971 received two consecutive life sentences for the armed robbery and armed burglary convictions. We affirmed the convictions and the sentences on direct appeal. Dillbeck v. State, 643 So.2d 1027 (Fla.1994).
Dillbeck filed a rule 3.850 motion for postconviction relief on April 23, 1997, and an amended motion on April 16, 2001. In the amended motion, Dillbeck raised several claims of ineffective assistance of counsel, some falling under the "ineffectiveness per se," "presumed prejudice" standard of United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and some falling under the traditional, two-pronged standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Dillbeck claimed that without his consent, his trial counsel conceded that Dillbeck was guilty of first-degree murder. Dillbeck argued that he, therefore, was entitled to relief under Cronic and Nixon v. Singletary, 758 So.2d 618 (Fla.2000) (applying Cronic to claim that counsel conceded defendant's guilt to first-degree murder without defendant's affirmative and explicit consent), on the ground that counsel's performance was ineffective per se. Second, Dillbeck claimed that his trial counsel conceded the applicability of the "heinous, atrocious, or cruel" aggravating circumstance without his consent. Dillbeck argued that he, therefore, was entitled to relief under Cronic and Nixon on the ground that counsel's performance was ineffective per se or, alternatively, under the traditional, two-pronged test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), on the ground that counsel's performance was deficient and he was prejudiced by the deficiency. Dillbeck also argued that his trial counsel was ineffective under Strickland for (1) failing during voir dire to challenge certain jurors for cause, (2) failing to move for a change of venue, (3) failing to request a PET scan, and (4) introducing at the penalty phase details of Dillbeck's criminal history. Finally, Dillbeck argued that at trial he was denied the presumption of innocence by being forced to wear restraints in the jury's presence.
The circuit court conducted an evidentiary hearing at which both Dillbeck and Dillbeck's trial counsel testified. The circuit court then denied relief in an inelaborate order, stating only that Dillbeck's motion was "without grounds for relief and ... there would be no benefit from a further recitation of the facts or argument by this Court." State v. Dillbeck, Case No. 90-2795-AF (Fla.2d Cir. Ct. order filed Sept. 3, 2002) ("Order Denying Amended Motion to Vacate Judgment of Conviction and Sentence"). Dillbeck now appeals the circuit court's denial of relief.[6] He also petitions this Court for a writ of habeas corpus, arguing that Florida's capital sentencing statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

II. REMAND TO THE CIRCUIT COURT
With the exception of Dillbeck's claim that his trial counsel was ineffective per se under Cronic and Nixon for conceding that he was guilty of first-degree murder without his consent, which we will address *972 below, we remand the case to the circuit court to enter findings of fact and conclusions of law as to all the claims Dillbeck has raised before this Court.[7] Florida Rule of Criminal Procedure 3.850(d) requires postconviction trial courts to make such findings and conclusions. The rule provides as follows:
If an evidentiary hearing is required, the court shall grant a prompt hearing thereon and shall cause notice thereof to be served on the state attorney, determine the issues, and make findings of fact and conclusions of law with respect thereto.
Fla. R.Crim. P. 3.850(d) (emphasis added). "[T]he trial court's failure ... to make findings of fact and conclusions of law violated Florida Rule of Criminal Procedure 3.850(d)." Jones v. State, 740 So.2d 520, 524 (Fla.1999). "We have repeatedly stressed the need for trial judges to enter detailed orders in postconviction capital cases. The present order is completely inadequate and does not assist us in our review." Ragsdale v. State, 798 So.2d 713, 720 (Fla.2001).[8]
With the exception of Dillbeck's Cronic/Nixon claim  that counsel conceded his guilt without his consent  all of the claims Dillbeck has raised before this Court must be analyzed under the two  pronged test of Strickland.[9] Such claims present mixed questions of law and fact *973 and, therefore, require us to employ a mixed standard of review: we defer to the trial court's factual findings (to the extent they are supported by competent, substantial evidence), but we review the trial court's legal conclusions de novo. Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999); see also Carroll v. State, 815 So.2d 601, 610 (Fla.2002); Porter v. State, 788 So.2d 917, 923 (Fla.2001). Because we cannot determine from the circuit court's cursory order what its findings of fact and conclusions of law were as to each of Dillbeck's claims, we remand the case to the circuit court to elaborate on its order by making such findings and conclusions in a detailed and timely manner.[10]

III. COUNSEL'S CONCESSION OF GUILT
We need not remand Dillbeck's claim that his counsel was ineffective per se for conceding that he was guilty of first-degree murder without his consent. The record reveals that during voir dire and at trial, Dillbeck's counsel repeatedly conceded that Dillbeck was guilty of felony murder.[11] Dillbeck claims that he was not informed that counsel would make such concessions nor did he consent to counsel making such concessions. He argues that counsel's assistance, therefore, was ineffective per se under United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d *974 657 (1984), Nixon v. Singletary, 758 So.2d 618 (Fla.2000) (Nixon II), and Nixon v. State, 857 So.2d 172 (Fla.2003) (Nixon III). Dillbeck's claim is without merit. After reviewing the trial record, we conclude, as a matter of law, that neither Cronic nor the Nixon line of cases applies to Dillbeck's claim. We therefore affirm the circuit court's denial of relief.

A.
Ineffective assistance of counsel claims generally are analyzed under the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Nixon II, 758 So.2d at 622 ("We emphasize that the Strickland standard normally applies to ineffective assistance of counsel claims."). Under Strickland, a defendant is entitled to relief if he can show that his counsel's performance was deficient and that he was prejudiced by the deficient performance. 466 U.S. at 687, 104 S.Ct. 2052. However, if the defendant can demonstrate that counsel "entirely fail [ed] to subject the prosecution's case to meaningful adversarial testing," the law will presume prejudice and deem counsel ineffective per se. Cronic, 466 U.S. at 659, 104 S.Ct. 2039.
We applied the presumed prejudice standard of Cronic in Nixon II. Nixon's trial counsel told the jury during his opening statement that "there will be no question that [the victim] died a horrible, horrible death" and "there won't be any question, none whatsoever, that my client, Joe Elton Nixon, caused [the victim's] death.... That fact will be proved to your satisfaction beyond any reasonable doubt." Nixon II, 758 So.2d at 620. During his closing argument, Nixon's counsel told the jury: "I think you will find that the State has proved beyond a reasonable doubt each and every element of the crimes charged, first-degree premeditated murder, kidnapping, robbery, and arson." Id. We noted that Nixon's counsel's statements "were the functional equivalent of a guilty plea," id. at 624, and we held that Cronic's presumed prejudice standard would apply and counsel would be deemed ineffective per se if Nixon could "establish that he did not consent to counsel's strategy" of conceding guilt. Id. at 623. Furthermore, we held that Nixon's consent must have been "affirmative" and "explicit"; "[s]ilent acquiescence is not enough." Id. at 624. We also held that "to avoid similar problems in the future ... if a trial judge ever suspects that a similar strategy [of conceding the defendant's guilt] is being attempted by counsel for the defense, the judge should stop the proceedings and question the defendant on the record as to whether or not he or she consents to counsel's strategy." Id. at 625.
At the evidentiary hearing conducted by the circuit court on remand, Nixon's trial counsel testified "that Nixon provided neither verbal nor nonverbal indication that he did or did not wish to pursue counsel's strategy of conceding guilt." Nixon III, 857 So.2d at 175-76. Testimony at the evidentiary hearing revealed only that "Nixon did nothing when asked his opinion regarding this trial strategy." Id. at 175. Based on this testimony, the circuit court denied relief, holding that "Nixon's pattern of interactions with counsel" demonstrated that "Nixon's failure to approve or disapprove verbally was approval of counsel's strategy." Id. at 176. On appeal, we reversed the circuit court's denial of relief. We held that Nixon was entitled to a new trial because "there [was] no competent, substantial evidence which establishe[d] that Nixon affirmatively and explicitly agreed to counsel's strategy." Id.

*975 B.
Dillbeck argues that he is entitled to relief under Cronic and the Nixon cases. Dillbeck's argument, however, is without merit. Initially, Dillbeck argues that he is entitled to relief because the trial court did not conduct an on-the-record inquiry to determine whether or not he consented to trial counsel's strategy of conceding guilt. That requirement, however, was articulated by this Court nine years after Dillbeck's trial and, by its own terms, was intended to be prospective only. See Nixon II, 758 So.2d at 625 ("[I]n order to avoid similar problems in the future, we hold that if a trial judge ever suspects that a similar strategy is being attempted ... the judge should stop the proceedings and question the defendant on the record....") (emphasis added).[12]
Dillbeck also argues that he is entitled to relief under the Nixon line of cases because he did not consent affirmatively and explicitly to counsel's strategy of conceding that he was guilty of felony murder. However, as we noted above, the trial record demonstrates conclusively, as a matter of law, that Dillbeck is not entitled to relief under Nixon. Two factors in the trial record compel this result. The first, and most important, factor is Dillbeck's own trial testimony, which mirrored counsel's strategy of conceding guilt to felony murder but contesting a finding of premeditation. Like Dillbeck's counsel's concessions to the jury, Dillbeck himself admitted at trial that he was guilty of felony murder, but he argued that the killing was not done with premeditation. Tr. at 1981-82. This is precisely the same concession Dillbeck's counsel made and about which Dillbeck now complains.
The second factor that removes Dillbeck's case from the scope of the Nixon cases and leads us to conclude that Dillbeck, as a matter of law, is not entitled to relief is that the State twice brought the Nixon issue to the trial court's attention and requested that the judge question Dillbeck to determine if he consented to counsel's concessions of guilt. Id. at 325-26 (during voir dire); id. at 1647 (opening statement). Both times, Dillbeck's trial counsel objected to any such inquiry, arguing that the matter was confidential and subject to the attorney-client privilege. Id. at 326-27 (voir dire); id. at 1648 (opening statement).[13] When the State raised the issue during voir dire, the judge did not question Dillbeck, but he did ask for, and he received, counsel's assurance that "[he had] discussed the matter with Mr. Dillbeck." Tr. at 329. The judge then stated for the record:
I do find that [Dillbeck's counsel] has assured me that he has discussed the strategy [of conceding guilt] with Mr. Dillbeck.... Mr. Dillbeck has been *976 present throughout the inquiry of the jurors. I find that Mr. Dillbeck appears to be totally aware of the proceedings, that he has responded to each of the jurors that have come into the room, that he is well aware of what is going on.

... I do believe that if he in any way disagreed with the strategy of his lawyer in the handling of this matter, that he could make that known to me, if he chose to do so. And he has not done so and I would also say that from my experience with [Dillbeck's counsel] ... it is inconceivable to me that [he] could be accused of being ineffective counsel....
So, at this point, I do decline to ask Mr. Dillbeck directly with regard to this question. But I would certainly give Mr. Dillbeck an opportunity to be heard on it if he chose to do so.

....
And I assume from his lack of response to my statement and the smile on his face at this time, that he does not intend to respond at this point.
Id. at 330-32 (emphasis added). The judge explained that he was just trying to be cautious to avoid the problems that had arisen in Nixon and stated that he was "satisfied that this is a knowing procedure that both [counsel] and Mr. Dillbeck are proceeding in." Tr. at 333. When the State again raised the issue, this time after Dillbeck's counsel's opening statement, Dillbeck's counsel again objected to any questioning of Dillbeck. However, Dillbeck's counsel assured the court that he had "discussed all this with my client." Id. at 1648. The judge agreed with counsel that it would be improper to question Dillbeck, but he told counsel that "it would be very comforting to me if Mr. Dillbeck would be willing to say to the Court that he has discussed this matter with you and is aware of the consequences and you have explained it thoroughly to him." Id. at 1650. Dillbeck's counsel replied: "Well, he probably would if I asked him to, but I think this is important." Id. The judge then concluded the matter by stating:
I think that [Dillbeck's counsel] has given me the assurances that I need to allow this matter to proceed.... I would assure anyone who reads this record that I believe this is the most effective strategy that [Dillbeck's counsel] could implement.... Mr. Dillbeck has been present throughout all these proceedings. He was present throughout the voir dire examination and is obviously alert and intelligent and ... there is no question in my mind but [that] he understands fully what is happening here and would indicate an objection if he did not concur with it.

Id. at 1651-52 (emphasis added). The record reveals that Dillbeck was informed by the court of his right to object to his counsel's strategy of conceding guilt, and he chose not to object.
For each of these reasons, we hold, as a matter of law, that Dillbeck is not entitled to relief under the Nixon line of cases. We therefore affirm the circuit court's denial of relief.

IV. RING CLAIM
In his petition for a writ of habeas corpus, Dillbeck challenges the validity of his death sentence by arguing that Florida's capital sentencing statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We rejected similar claims in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002); and similar cases. Furthermore, one of the aggravating circumstances found by the *977 trial court in this case was Dillbeck's prior conviction of a violent felony, "a factor which under Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),] and Ring need not be found by the jury." Jones v. State, 855 So.2d 611, 619 (Fla.2003); see also, e.g., Doorbal v. State, 837 So.2d 940, 963 (Fla.2003) (rejecting Ring claim where one of the aggravating circumstances found by the trial judge was defendant's prior conviction for a violent felony), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003). Accordingly, we reject Dillbeck's claim and deny his petition for a writ of habeas corpus.

V. CONCLUSION
We affirm the circuit court's denial of relief on Dillbeck's claim that his counsel was ineffective per se for conceding Dillbeck's guilt to felony murder. However, with respect to the other claims in Dillbeck's rule 3.850 motion, we remand to the circuit court to enter findings of fact and conclusions of law as required by Florida Rule of Criminal Procedure 3.850(d). We also deny Dillbeck's petition for a writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
[2] For a description of the underlying facts, see Dillbeck v. State, 643 So.2d 1027, 1028 (Fla.1994).
[3] The trial judge found the following aggravating circumstances: (1) Dillbeck committed the murder while under a sentence of imprisonment; (2) Dillbeck previously had been convicted of another capital felony; (3) Dillbeck committed the murder during the course of a robbery and burglary; (4) Dillbeck committed the murder to effect escape; and (5) the murder was especially heinous, atrocious, or cruel. Id. at 1028 n. 1 (citing § 921.141, Fla. Stat. (1989)).
[4] The trial court found that Dillbeck's capacity to conform his conduct to the requirements of the law was substantially impaired. Id. at 1028 n. 2 (citing § 921.141(6)(f), Fla. Stat. (1989)).
[5] The trial court found the following nonstatutory mitigating circumstances, but gave little weight to several of them: (1) Dillbeck had an abusive childhood; (2) Dillbeck suffers from fetal alcohol effect as a result of his mother's alcohol consumption; (3) Dillbeck suffers from mental illness; (4) Dillbeck's mental illness is treatable; (5) Dillbeck was imprisoned at an early age in a violent prison; (6) Dillbeck has been a good and well-behaved inmate; (7) Dillbeck has a loving family; and (8) Dillbeck has demonstrated remorse. Id.
[6] Dillbeck has not appealed the circuit court's denial of relief on his claim that he was denied the presumption of innocence by being forced to wear physical restraints in the jury's presence nor on his claim that trial counsel was ineffective for failing to request a PET scan.
[7] As we have noted, Dillbeck has not raised before this Court two of the claims rejected by the circuit court. See supra note 6. The circuit court need not address those claims on remand.
[8] See also Fla. R.Crim. P. 3.851(f)(5)(D) (providing that after conducting an evidentiary hearing a trial court "shall render its order, ruling on each claim considered at the evidentiary hearing and all other claims raised in the motion, making detailed findings of fact and conclusions of law with respect to each claim, and attaching or referencing such portions of the record as are necessary to allow for meaningful appellate review") (emphasis added) (applicable to postconviction motions filed on or after October 1, 2001).
[9] This includes Dillbeck's claim that counsel was ineffective for conceding the applicability of the "heinous, atrocious, or cruel" aggravating circumstance. The United States Supreme Court's recent decision in Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), suggests that such a claim should be analyzed under the two-pronged standard of Strickland rather than the presumed-prejudice standard of Cronic. Although Cronic held that "[t]here are ... circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," 466 U.S. at 658, 104 S.Ct. 2039, one of which is when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," id. at 659, 104 S.Ct. 2039, in Bell the Court stressed that "the attorney's failure must be complete." 535 U.S. at 697, 122 S.Ct. 1843 (emphasis added). In Bell, the Court rejected the defendant's claim that Cronic's presumption of prejudice should apply where counsel failed to introduce mitigating evidence and did not make a closing argument at the penalty phase; the Court held that "[t]he aspects of counsel's performance challenged by [the defendant]... are plainly of the same ilk as other specific attorney errors we have held subject to Strickland's performance and prejudice components." 535 U.S. at 697-98, 122 S.Ct. 1843. The Court's holding rested on the distinction it drew between "counsel['s] fail[ure] to oppose the prosecution throughout the sentencing proceeding as a whole" and "counsel['s] fail[ure] to do so at specific points." Id. at 697, 122 S.Ct. 1843. "For purposes of distinguishing between the rule of Strickland and that of Cronic, this difference is not of degree but of kind." Id.

Even assuming, as we do for the moment, that Dillbeck's counsel did concede the applicability of the "heinous, atrocious, or cruel" aggravating circumstance, Dillbeck alleges only that "counsel failed to [challenge the prosecution's case] at specific points." Id. He does not allege that "counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole." Id. (emphasis added). Therefore, in order to prevail on this claim, as well as on the other claims which we remand to the circuit court, Dillbeck must satisfy both prongs of the Strickland test by demonstrating that counsel's performance was deficient and that he was prejudiced by the deficient performance. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
[10] Our approach in this situation is consistent with the approach taken by the district courts in similar situations. Both the First and Second Districts have recently remanded cases in which the circuit courts failed to make findings of fact as required by rule 3.850(d). See Kornegay v. State, 826 So.2d 1081 (Fla. 1st DCA 2002) (remanding to the circuit court for factual findings because ineffective-assistance claims present mixed questions of law and fact which require an appellate court to defer to the factual findings of the trial court while independently reviewing its legal conclusions); Bunger v. State, 779 So.2d 542, 543 (Fla. 2d DCA 2000) (remanding "[b]ecause the trial court failed to make findings of fact and conclusions of law, and also failed to provide rationales for denying claims 2 and 3").
[11] During voir dire, counsel made the following statement (or something very similar) to virtually every prospective juror:

I must tell you that if you sit on this jury, you will find that Donald Dillbeck did commit this crime. You will find that it was a particularly brutal crime. The woman was stabbed repeatedly.
Tr. at 209 (making statement to juror Whitley); see also, e.g., id. at 42, 60, 77, 88, 104, 124, 145, 162, 179 (making identical or similar statements to the first nine prospective jurors). In his opening statement and closing argument, counsel conceded that Dillbeck was guilty of felony murder. In his opening statement, counsel conceded that Dillbeck had killed the victim, and he told the jury that the two issues for them to decide were whether the killing had been premeditated and whether Dillbeck should be sentenced to life imprisonment or death. Id. at 1639-40. Counsel told the jury:
I can tell you, you will get to that second phase [the penalty phase]. You will get to the issue of life or death, regardless of whether you find this to be a premeditated murder or whether you find it to be what has been referred to as felony murder....
As for the evidence, it is much as [the State] has said. The State, I'm sure, will do a very good job of convincing you, too, that my client did commit the crime. But I think you will see that that doesn't resolve this issue of premeditated design.
Id. at 1640. In his closing argument, counsel argued that the State had not proven that the murder was premeditated. He urged the jury to "bring back a verdict of not guilty at least as to the premeditated murder," stating that Dillbeck "committed some terrible crimes here but clearly the State has not proven that it was a premeditated killing. At the very least, there is reasonable doubt." Id. at 2050-51.
[12] See also Allen v. State, 662 So.2d 323, 329 (Fla.1995) (holding that the requirement that a trial court must conduct an on-the-record inquiry when a defendant waives his right at the penalty phase to present mitigating evidence, articulated in Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993), was to be applied prospectively only) ("[O]ur ruling in Koon by its own terms is prospective only.").
[13] As we noted above, Dillbeck's trial took place nine years before we issued our opinion in Nixon II. Before Nixon II, there was no requirement that a trial judge conduct an on-the-record inquiry to determine whether a defendant consented to his counsel's concessions of guilt. See Nixon II, 758 So.2d at 625 ("[I]n order to avoid similar problems in the future, we hold that if a trial judge ever suspects that a similar strategy is being attempted ... the judge should stop the proceedings and question the defendant on the record....") (emphasis added). Therefore, despite the State's request, the judge did not err in refusing to question Dillbeck to determine if he consented to counsel's strategy of conceding guilt.