964 So.2d 95 (2007)
Donald David DILLBECK, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-1561.
Supreme Court of Florida.
May 10, 2007.
Rehearing Denied August 27, 2007.
*96 George W. Blow, III, Live Oak, FL, for Appellant.
Bill McCollum, Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
This case returns to us after remand with directions that the trial court support its earlier denial of Donald David Dillbeck's motion to vacate judgment of conviction of first-degree murder and sentence of death with sufficient findings of fact and conclusions of law as required by Florida Rule of Criminal Procedure 3.850(d). See Dillbeck v. State, 882 So.2d 969 (Fla.2004) (Dillbeck II).[1] The trial *97 court properly complied with this direction. For the following reasons, we affirm the denial of relief.

I. FACTUAL AND PROCEDURAL BACKGROUND
The facts of this case are as follows:
Dillbeck was sentenced to life imprisonment for killing a policeman with the officer's gun in 1979. While serving his sentence, he walked away from a public function he and other inmates were catering in Quincy, Florida. He walked to Tallahassee, bought a paring knife, and attempted to hijack a car and driver from a shopping mall parking lot on June 24, 1990. Faye Vann, who was seated in the car, resisted and Dillbeck stabbed her several times, killing her. Dillbeck attempted to flee in the car, crashed, and was arrested shortly thereafter and charged with first-degree murder, armed robbery, and armed burglary. He was convicted on all counts and sentenced to consecutive life terms on the robbery and burglary charges, and, consistent with the jury's eight-to-four recommendation, death on the murder charge.
Dillbeck v. State, 643 So.2d 1027, 1028 (Fla.1994) (Dillbeck I). On direct appeal, this Court affirmed Dillbeck's convictions and sentences.[2] Dillbeck's subsequent petition for writ of certiorari to the United States Supreme Court was denied on March 20, 1995. See Dillbeck v. Florida, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 226 (1995).
On April 23, 1997, Dillbeck filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. On September 3, 2002, after an evidentiary hearing, the trial court denied Dillbeck's motion. Dillbeck appealed that decision. He also filed a petition for writ of habeas corpus. In his appeal, Dillbeck raised four ineffective assistance of counsel claims under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),[3] as well as a per se ineffective assistance of counsel claim under United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and Nixon v. State, 857 So.2d 172 (Fla.2003), rev'd, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). In his petition for writ of habeas corpus, Dillbeck argued that Florida's capital sentencing statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We denied Dillbeck's Ring and Cronic/Nixon claims. However, we remanded Dillbeck's remaining ineffective assistance of counsel claims to the trial court with directions to make findings of fact and conclusions of law as required by Florida Rule of Criminal Procedure 3.850(d). See Dillbeck II, 882 So.2d at 970.
On July 22, 2005, the trial court submitted its findings of fact and conclusions of *98 law to this Court. Dillbeck raises five issues in this appeal. His first claim is that the trial court erred in adopting virtually verbatim the proposed findings of fact and conclusions of law submitted by the State. His remaining four claims allege denial of his right to effective assistance of trial counsel. Specifically, Dillbeck alleges his trial counsel was ineffective because he (1) conceded the heinous, atrocious, or cruel (HAC) aggravating factor; (2) failed to conduct proper voir dire; (3) failed to move for a change of venue; and (4) introduced details of Dillbeck's previous criminal activity to the jury during the penalty phase. We address these five claims in turn.
II. VIRTUAL VERBATIM ADOPTION OF THE STATE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
Dillbeck's initial claim is that the trial court erred in adopting virtually verbatim the State's proposed findings of fact and conclusions of law. Dillbeck concedes that on remand the trial judge directed both parties to submit proposed orders. Further, he does not claim that he was not served with a copy of the State's proposed order or denied an opportunity to object. This claim is without merit. See Glock v. Moore, 776 So.2d 243, 248-49 (Fla.2001) (rejecting challenges to a trial court's adoption of the State's proposed postconviction order "where the defendant had notice of the request for proposed orders and an opportunity to submit his or her own proposal and/or objections") (citing Patton v. State, 784 So.2d 380, 388-89 (Fla.2000); Groover v. State, 640 So.2d 1077, 1078-79 (Fla.1994)).

III. INEFFECTIVE ASSISTANCE OF COUNSEL
As stated earlier, Dillbeck raises four ineffective assistance of counsel claims: (1) concession of the HAC aggravating circumstance; (2) failure to conduct proper voir dire; (3) failure to move for change of venue; and (4) introduction of details of Dillbeck's criminal history to the jury during the penalty phase. We will address each of these claims after briefly stating the standard of review for such claims.
We review claims of ineffective assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As we stated in Wike v. State, 813 So.2d 12, 17 (Fla.2002), this standard requires a defendant to establish two prongs:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052); see also Rutherford v. State, 727 So.2d 216 (Fla.1998). Failure to establish either prong results in a denial of the claim. See Ferrell v. State, 918 So.2d 163, 170 (Fla.2005) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
To establish deficient performance under Strickland, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" *99 based on "prevailing professional norms." 466 U.S. at 688, 104 S.Ct. 2052; Wike, 813 So.2d at 17. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052; see also Wike, 813 So.2d at 17.
Finally, as to our standard of review, we defer to the trial court's findings of fact regarding the credibility of witnesses and the weight assigned to the evidence but review the deficiency and prejudice prongs de novo. Windom v. State, 886 So.2d 915, 921 (Fla.2004) (citing Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999)).

A. Concession of the Heinous, Atrocious, or Cruel Aggravator
Dillbeck first claims that his trial counsel was ineffective for conceding the heinous, atrocious, or cruel (HAC) aggravator. On remand, the trial court made the following findings, which are supported by competent substantial evidence:
Dillbeck asserts his counsel was ineffective for conceding the HAC aggravator. Dillbeck claims that when his trial counsel described the murder as "brutal" this was conceding the heinous, atrocious and cruel aggravator. However, describing the murder as "brutal" is not conceding the heinous, atrocious and cruel aggravator when trial counsel is attempting to argue to the jury that even a terrible murder could result in a life sentence.
During jury selection, trial counsel referred to the crime as "brutal" and "terrible" to prospective jurors. During opening statements of [the] guilt phase, trial counsel, said that he was sure the State will do a very good job of convincing you that this was a "terrible, brutal crime." After describing what Dillbeck's testimony would be, trial counsel told the jury you will get to see very graphically what he did and it is a terrible, brutal thing. Trial counsel noted that "The State, I'm sure, will show you in graphic detail the brutality of this crime, You will see some terrible photographs. You will hear some terrible details, but I think you'll soon see that the very brutality of this crime shows you what sort of state he was in. This wasn't some kind of calculated, planned act. It is the kind of brutality you will see in a frenzy, someone that's in a rage, someone who has simply lost control."
In his initial closing of [the] guilt phase, trial counsel admitted this was "a terrible, terrible crime" and there are "not enough words to express the horrible nature of what he did." Trial counsel, in support of his argument that the defendant was telling the truth in his trial testimony, coming "back to the brutality, the intensity of the assault" noted that "they have some terrible pictures here in evidence," but the very intensity of the attack shows it was the kind of attack that would occur if the fellow was in a "frenzy, a rage." Trial counsel observed: "he's committed some terrible crimes here but clearly the State has not proven that it was a premeditated killing."

*100 During [the] penalty phase, the prosecutor, in his opening, urged the jury to find the HAC aggravator based on the pain involved and the length of time it took to die. Trial counsel, in his opening in [the] penalty phase, said: "my client is worthy of mercy" and "you should let him live." Trial counsel told the jury that he was going to review Dillbeck's life with them and they would hear a lot of details and "a lot of it is going to be bad." Trial counsel acknowledged that "my client has done something terrible, terrible things during the course of his life." Trial counsel noted that the Indiana crime was "chillingly similar to this murder." Trial counsel acknowledged by the age of fifteen Dillbeck had "caused a great deal of pain and damage." Trial counsel explained that Dillbeck suffers from Fetal Alcohol Syndrome which resulted in brain damage. Trial counsel also discussed child abuse during Dillbeck's childhood and his father abandoning him. Trial counsel referred to Dillbeck using drugs including the fact that Dillbeck was taking speed when he stabbed the victim in Indiana. Trial counsel ended his opening with "you will see that he is deserving of mercy" and "he should be permitted to live." In his closing at [the] penalty phase, trial counsel stated that life is the only fair resolution. Trial counsel repeatedly asked for mercy. Trial counsel, as part of his discussion against finding the HAC aggravator, told the jury that he had said all along that it was a brutal killing. Trial counsel argued that Dillbeck did not "decide this would be a good way to torture somebody." Trial counsel also argued against the HAC aggravator by pointing out, based on the pathologist's testimony, the victim had mercifully died quickly. He asked the jury to focus on the definition of HAC which required "some special intent to inflict a particularly tortuous sort of death." Trial counsel stated that the mitigating evidence showed the reasons that Dillbeck caused this pain and wasted his life. He argued that the mitigation made these "senseless crimes" make sense and "the reason he has done these terrible things is because he is damaged and he's mentally ill." Trial counsel ended [the] penalty phase with the statement that he has committed some terrible crimes but he is entitled to mercy and then urged the jury to vote for life and let him live.
(Record citations omitted.)
At the postconviction evidentiary hearing, trial counsel denied that his description of the murder as brutal was a concession of the HAC aggravator. As summarized by the trial court in its order:
Trial counsel testified at the evidentiary hearing that while he admitted the killing was brutal, he did not concede the HAC aggravator. He argued that the murder was not heinous, atrocious and cruel. While he thought that the jury would find the HAC aggravator, he argued that the State had not proven it. He knew that the State would be seeking the HAC aggravator. He gave the prospective jurors a series of hypotheticals during jury selection because he thought that some jurors would, given the circumstances of the crime, could never vote for life, which he wished to know and excuse those jurors. He also wanted the jurors to understand even a "terrible," "horrible" murder could still result in a life sentence. Trial counsel described the crime as brutal during voir dire because he thought it was best to confront difficult issues as soon as possible.
(Record citations omitted.)
In denying this claim, the postconviction trial court found that Dillbeck failed to *101 prove both prongs of the Strickland standard. According to the trial court, "counsel did not concede to the HAC aggravator" by describing the crime as "brutal." The court found that it was reasonable trial strategy to confront difficult issues rather than ignore them. Further, the court found no prejudice because the jury would have considered the murder to be heinous, atrocious, or cruel without counsel's description of the murder as brutal. Also, the court agreed with the State's contention that the jury would have recommended death regardless of the HAC aggravator based on the four remaining aggravators, which included a prior conviction for the murder of a law enforcement officer.[4]
We agree with the trial court's conclusion that Dillbeck has failed to establish either prong of the Strickland analysis in this claim. The presumption that counsel's decision to refer to the murder as brutal might be considered sound trial strategy has clearly not been overcome. See Brown v. State, 846 So.2d 1114, 1125 (Fla.2003); Atwater v. State, 788 So.2d 223, 230 (Fla.2001). Dillbeck's trial counsel did not render deficient performance in this regard. See Brown, 846 So.2d at 1125. Counsel reasonably sought to soften the impact of the evidence the State would introduce by conceding that the crime was brutal in order to prepare the jury for it. See id. (finding defense counsel's reference to victim "gurgling" on his own blood was a reasonable trial tactic seeking to dilute some of the damaging testimony the jury would later hear). Moreover, given the four remaining aggravators (including murder of a law enforcement officer) and few minor mitigators, Dillbeck has not demonstrated prejudice from the alleged deficiency under the Strickland standard.
Therefore, we affirm the trial court's denial of Dillbeck's claim.

B. Failure to Conduct Proper Voir Dire
Dillbeck's second ineffectiveness claim is based on trial counsel's alleged failure to exercise a for-cause challenge against biased jurors. In order to prove deficient performance in this claim, Dillbeck must establish that trial counsel had a "reasonable basis to assert for-cause challenges" against these jurors. Reaves v. State, 826 So.2d 932, 939 (Fla.2002). Dillbeck claims two grounds for which counsel should have asserted for-cause challenges: (1) exposure to pretrial publicity; and (2) inclination to impose the death penalty.
The postconviction trial court made these findings on this issue, which are supported by competent, substantial evidence.
[At the postconviction evidentiary hearing,] [t]rial counsel, Mr. Murrell, testified that he approached jury selection with a genuine concern that "a lot' of people would be inclined maybe automatically for death given the circumstances of the case." Mr. Murrell testified that "it was pretty clear to me that Mr. Dillbeck was going to get convicted of first degree murder." He went on to testify he hoped that "maybe we could get felony murder as opposed to premeditated murder . . . [and] convince a jury to recommend a life sentence." Mr. Murrell testified he approached jury selection with an eye toward getting rid of those you think will be unfavorable and to end up with a jury you have a *102 chance with. Although he talks to his client about potential jurors, he believes the final decision is up to him. As trial counsel explained, jury selection is a give and take. "Your best hope is just to get rid of those you think will be unfavorable, and to typically end up with something you hope is at least neutral or that you have got a chance with."
Dillbeck testified at the hearing that there were a "couple [of] people" he had a question about but they were excused. When asked whether he had questions about any other juror, Mr. Dillbeck testified that he did not believe he did.
This Court finds Mr. Murrell's testimony regarding jury selection to be credible. The Court also finds that none of the jurors were biased due to their exposure to pre-trial publicity, and thus, this Court would not have granted the cause challenges had counsel made such challenges. The seven actual jurors were not subject to challenge for cause because, while most of them were exposed to pre-trial publicity, each assured the trial court that they could decide the case based solely on the evidence. None of the actual jurors knew of the prior capital felony conviction. Trial counsel was not ineffective for failing to challenge jurors who were not biased.1
1 Two of the complained of jurors were alternates only who did not participate in the jury's verdict. Dillbeck cannot show prejudice based on alternate jurors that never served.
(Record citations omitted.) The trial court concluded that counsel's strategy was reasonable and that there was no legal basis for challenging the jurors. Therefore, the court held that counsel's performance was not deficient. The court also determined that there was no prejudice because each juror was carefully questioned, and no potential bias was found. We agree with the trial court that Dillbeck has demonstrated neither deficiency nor prejudice.
First, Dillbeck claims that counsel should have challenged most of the jurors based on exposure to pretrial publicity. More than mere exposure to pretrial publicity must be shown to establish such a claim. As the United States Supreme Court has stated:
It is not required . . . that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
Irvin v. Dowd, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Thus, the mere fact that most of Dillbeck's jurors were exposed to pretrial publicity and may have formed preconceived opinions on the case is not enough to disqualify them. In this case, each juror was asked about exposure to pretrial publicity, and each juror assured the court that he or she could lay aside any impression or opinion and render a verdict based solely on the evidence presented in court.
Second, Dillbeck claims that counsel should have challenged some of the jurors who were inclined to vote for the death *103 penalty. Dillbeck's trial counsel adopted a reasonable trial strategy of avoiding a death sentence by attempting to seat jurors likely to recommend a life sentence. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) (holding that counsel adopted a reasonable strategy not to object to a juror who he felt would be less likely to recommend the death penalty, even though the juror had been exposed to pretrial publicity and stated during voir dire that she could not be impartial). All of Dillbeck's jurors stated that they would vote for life if the mitigating factors outweighed the aggravating factors. This claim is without merit.

C. Failure to Move for Change of Venue
Next, Dillbeck argues that his trial counsel rendered ineffective assistance by failing to move for a change of venue due to extensive and inflammatory pretrial publicity. On remand, the postconviction trial court found that Dillbeck "established neither deficient performance nor prejudice regarding this claim" and that "[t]rial counsel made a reasonable tactical decision not to file a motion for change of venue." The postconviction trial court summarized the evidence presented as follows:
Trial counsel testified that he did not move for a change of venue. He thought about filing a motion but decided against it. He did not think the law supported a change of venue motion and that there was no merit to one, so he did not raise it. He did not move for change of venue after jury selection. Trial counsel testified that the newspapers' reports that he saw were accurate and did not distort the facts. Trial counsel again explained that he was not concerned about the facts of the case because "all the facts that were in the paper were facts that were going to come out during the trial" and noted that this was not a case where the confession had been suppressed but published in the newspapers. He was not concerned about prospective jurors who knew the facts of the crime because that was "all going to come out" during the trial. He further testified that he was concerned because the crime occurred at a popular shopping area where anybody who lives in Tallahassee has been, which could cause the jurors to identify with the victim, but at the same time, Tallahassee is a "good place to try a case from the defense standpoint." He was concerned about the murder occurring at Gayfers, a common shopping spot, but he felt he could deal with that. Trial counsel was also concerned about the place that the case would be transferred to because any other place, other than Gadsden County, in the panhandle you are going to have a "much more conservative jury, a jury much more likely to vote for death." Trial counsel testified that "the odds are you are not going to wind up in a place that is better than Tallahassee." Trial counsel testified that he did not think he had legally adequate grounds to request a change of venue. He was aware that if he had a lot of trouble selecting a jury, he could then request a change of venue after unsuccessfully attempting to empanel a jury.
Dillbeck testified that he made only one suggestion to trial counsel and that was asking about a change of venue. Dillbeck testified that he wanted a change of venue due to the publicity. The publicity portrayed him as a serial killer. They discussed the pros and cons of a change of venue. Dillbeck testified that trial counsel preferred to keep the trial in Tallahassee. Trial counsel told Dillbeck that Tallahassee was a "better place" for lenient jurors. *104 Trial counsel told Dillbeck that they were more likely to get a more liberal jury pool in Leon County. Dillbeck testified that they talked about other places where the case could be tried if they filed for a change of venue and it was granted.
There is no record evidence that there was extensive and inflammatory pre-trial publicity. Dillbeck, although granted an evidentiary hearing on this claim, did not introduce any newspaper articles reporting the prior murder. Collateral counsel did not attach the newspaper articles that referred to Dillbeck's prior conviction to his initial post-conviction motion nor his amended motion. Nor did he introduce any such articles at the evidentiary hearing. State v. Knight, 866 So.2d 1195, 1209 (Fla.2003) (explaining test for determining whether a change of venue should be granted based on pretrial publicity examines a number of circumstances including whether the publicity was made up of factual or inflammatory stories or favored the prosecution's side of the story). Dillbeck did not supply the trial court with any of this information and thus did not sufficiently factually develop this claim at the evidentiary hearing. Meeks v. Moore, 216 F.3d 951, 964 (11th Cir.2000) (finding no evidentiary support for ineffectiveness for failing to file a change of venue claim where collateral counsel introduced four newspaper articles which were meager and mundane). . . .
This Court finds Mr. Murrell's testimony regarding change of venue to be credible. The Court also finds that Dillbeck's jury was selected without undue difficulties and therefore, this Court would not have granted any motion for change of venue had one been made. Accordingly, counsel was not ineffective for failing to move for a change of venue.
(Record citations omitted.)
Based on these findings, which are supported by competent, substantial evidence, the postconviction trial court concluded that Dillbeck failed to establish either deficient performance or prejudice under Strickland. We agree. Although Dillbeck's trial counsel was concerned about the pretrial publicity, on balance he believed it would be best to try the case in Tallahassee in order to obtain the most favorable jury. This was a reasonable tactical decision and, therefore, not deficient performance. Moreover, no prejudice resulted. "When applying the prejudice prong to a claim that defense counsel was ineffective for failing to move for a change of venue, the defendant must, at a minimum, `bring forth evidence demonstrating that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court.'" Wike, 813 So.2d at 18 (alteration in original) (quoting Meeks v. Moore, 216 F.3d 951, 961 (11th Cir.2000); citing Provenzano v. Dugger, 561 So.2d 541, 545 (Fla.1990)). Dillbeck failed to demonstrate a legal basis for filing a motion for change of venue. Dillbeck produced no evidence of extensive pretrial publicity (newspaper articles, etc.) in support of this claim. Also, there were no undue difficulties in selecting an impartial jury because the jurors assured the court during voir dire that they could be impartial despite their extrinsic knowledge about the case. See Provenzano, 561 So.2d at 545. Therefore, any motion for change of venue would have been denied. Accordingly, we affirm the trial court's denial of Dillbeck's claim.

*105 D. Introduction of Details of Defendant's Criminal History to the Jury During the Penalty Phase
Finally, Dillbeck argues that his trial counsel was ineffective for introducing evidence of prior crimes and bad acts during the penalty phase which the State may not have been able to introduce under Florida law. On remand, the postconviction trial court made the following findings, which are supported by competent, substantial evidence:
Dillbeck testified at the evidentiary hearing that he did not consent to trial counsel admitting evidence relating to other crimes. Dillbeck admitted that none of the evidence relating to his past crimes was inaccurate. Dillbeck testified that he thought that it was unreasonable for trial counsel to introduce his past criminal conduct first in an attempt at a preemptive strike because that was the State's job. Dillbeck opined that the State would not have been able to introduce some of the evidence because it was not admissible. He acknowledged that his prior arrest record was a matter of public record. Dillbeck described his prior criminal arrests that did not result in convictions. He noted that trial counsel discussed these arrests in the penalty phase.
Trial counsel testified that he thought that the crime in Indiana was admissible because it was the motive for the murder of the deputy sheriff which he was going to put in issue. Dillbeck was fleeing from the stabbing in Indiana when he shot the deputy. The State had already videotaped the stabbing victim prior to the trial to admit during the penalty phase. He thought it was "better for us to own up to it" and address it than to have it come in as a revelation introduced by the State. He thought this evidence was admissible because he was going to open the door to it by going into the question of why he shot the deputy, which would make the evidence that he was fleeing to Florida from an Indiana crime admissible. Also, trial counsel was attempting to present as mitigating evidence that Dillbeck had a good prison record and had behaved in prison and that he was not a threat to others so long as he was in prison which he knew the State would attempt to rebut. He explained that, by the defense presenting evidence that he was a good inmate, it opened the door to the State presenting prior incidents in prison. The State already had Dillbeck's prison records. What had happened in prison was "not a secret." He wanted to address those things before the State revealed them to undercut his argument that Dillbeck was a good prisoner. Trial counsel would not have admitted this information if he did not think that it was admissible by the State. He explained that by introducing mitigating evidence, he had to accept some "not so favorable" rebuttal evidence by the State. Trial counsel thought that because his mitigation was going to open the door to this rebuttal evidence by the State, it was better to reveal the damaging rebuttal evidence himself than to have the State do it.
This Court finds Mr. Murrell's testimony to be credible. This Court finds that counsel's decision to present mitigation, although it necessarily opened the door for the State to attempt to rebut that mitigation, was a reasonable trial strategy and thus counsel was not ineffective.
(Record citations omitted.)
We agree with the trial court that counsel made a reasonable, strategic decision to present this evidence. Counsel knew that introducing the mental mitigation and the *106 model prisoner mitigation would open the door for the State to introduce evidence of a prior stabbing in Indiana, an escape attempt, and the stabbing of another inmate. Yet the only mitigation available was the mental mitigation and model prisoner mitigation, and counsel reasonably believed that the jury would be more likely to recommend death if the defense introduced no mitigation at all. Thus, despite its risk, we cannot say that trial counsel's decision to introduce this evidence was "outside the broad range of reasonably competent performance under prevailing professional standards." Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). It was reasonable for trial counsel himself to disclose the prior bad acts to soften or deflect the negative impact of the prejudicial evidence he knew the State would present. Accordingly, we affirm the postconviction trial court's conclusion that Dillbeck failed to show deficient performance by counsel for introducing details of his previous criminal activity to the jury during the penalty phase.

IV. CONCLUSION
For the foregoing reasons, we affirm the trial court's denial of Dillbeck's motion to vacate judgment of conviction of first-degree murder and sentence of death.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] We have jurisdiction of the appeal pursuant to article V, section 3(b)(1), Florida Constitution.
[2] On direct appeal, Dillbeck argued that the trial court erred in addressing (1) juror qualifications; (2) evidence of specific intent; (3) requiring Dillbeck to submit to a psychological exam by the State's expert; (4) flight instruction; (5) testimony of the State's mental health expert; (6) instruction on heinous, atrocious, or cruel; (7) the finding of heinous, atrocious, or cruel; (8) escape instruction; (9) proportionality; and (10) the allocation of the burden of proof in the penalty phase. Id. at 1028 n. 3.
[3] In his motion for postconviction relief, Dillbeck claimed that he was denied effective assistance of counsel under Strickland because his trial attorney (1) conceded the heinous, atrocious, or cruel (HAC) aggravating factor; (2) failed to conduct proper voir dire; (3) failed to move for a change of venue; and (4) introduced details of Dillbeck's previous criminal activity to the jury during the penalty phase.
[4] The four remaining aggravating factors were: (1) Dillbeck committed the murder while under a sentence of imprisonment; (2) Dillbeck had been previously convicted of another capital felony; (3) the murder was committed during the course of a robbery and burglary; and (4) the murder was committed to avoid arrest or effect escape.