PER CURIAM.
Elmer Leon Carroll, a prisoner under sentence of death and under an active death warrant, appeals from an order denying his successive motion to vacate his sentence of death filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the circuit court’s order denying relief.
BACKGROUND
Carroll was convicted of the 1990 first-degree murder and sexual battery of ten-year-old Christine McGowan, which occurred at her home in Apopka, Florida. The jury recommended death by a unanimous vote. In the sentencing order, the trial judge found three aggravating circumstances: (1) Carroll was previously convicted of two prior felonies involving the use or threat of violence to the person; (2) the capital felony was committed while Carroll was engaged in the commission of a sexual battery; and (3) the capital felony was especially heinous, atrocious, or cruel. Carroll was sentenced to death and this Court affirmed his convictions and death sentence on direct appeal in Carroll v. State, 636 So.2d 1316 (Fla.), cert. denied, 513 U.S. 973, 115 S.Ct. 447, 130 L.Ed.2d 357 (1994).
Carroll filed his amended initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 in 1997 raising twenty-four claims. We affirmed denial of relief as to all those claims in Carroll v. State, 815 So.2d 601 (Fla.2002). Carroll’s petition for habeas corpus in this Court alleging ineffective assistance of appellate counsel was also denied. Carroll, 815 So.2d at 624. In 2003, Carroll filed a *885 successive motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 alleging claims under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). We affirmed denial of relief on those claims in Carroll v. State, 904 So.2d 430 (Fla.2005) (table).
Carroll then proceeded to federal court, filing a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida in June 2005. The district court identified the main issue as whether Carroll’s death sentence is precluded under Atkins because he has been diagnosed as borderline mentally retarded and suffers from other mental issues. The federal district court denied relief on all Carroll’s claims. See Carroll v. Crosby, 2008 WL 2557555, *19 (M.D.Fla. Jun. 20, 2008). The federal district court granted a certificate of appeala-bility only as to the issue of whether the state trial court should have granted an evidentiary hearing on the claim of mental retardation. See Carroll v. Sec’y, Dept. of Corr., 2008 WL 3833275 (M.D.Fla. Aug. 13, 2008). On appeal from the order of the middle district, the Eleventh Circuit Court of Appeals affirmed denial of habe-as relief as to the claim that the state trial court deprived him of constitutional rights in summarily denying his claim concerning mental retardation and competency. See Carroll v. Secretary, DOC, 574 F.3d 1354, 1370 (11th Cir.), cert. denied, 558 U.S. 995, 130 S,Ct. 500, 175 L.Ed.2d 355 (2009).
Carroll filed the instant successive post-conviction proceeding after Governor Rick Scott signed a death warrant on April 17, 2013, and set Carroll’s execution for May 29, 2013. In his motion filed in the circuit court Carroll raised four claims.[1] A Huff[2] hearing was held on April 26, 2013, after which the circuit court issued its order summarily denying relief on all claims. In the order, the circuit court found that Carroll’s claim that his mental illness should exempt him from execution was procedurally barred and, based on this Court’s precedent rejecting similar claims, was without merit. The court further held that Carroll’s constitutional challenge to the Governor’s authority to sign death warrants was procedurally barred and, further, without merit based on the Governor’s constitutional power granting him discretion in such matters. The court similarly rejected Carroll’s claim that he was provided insufficient clemency proceedings. The circuit court rejected the challenge on the ground that the Governor’s constitutional clemency power is independent of the Legislature and the judiciary and because this Court has previously rejected identical challenges. Finally, the circuit court rejected as untimely and without merit Carroll’s claim that execution after a lengthy stay on death row constitutes cruel and unusual punishment.
ANALYSIS
The circuit court denied Carroll’s successive claims without an evidentiary hearing. Under rule 3.851, “[pjostconviction claims may be summarily denied when they are legally insufficient, should have *886 been brought on direct appeal, or are positively refuted by the record.” Marek v. State, 8 So.3d 1123, 1127 (Fla.2009) (quoting Connor v. State, 979 So.2d 852, 868 (Fla.2007)). Our review of the circuit court’s order in this case is de novo. See Marek, 8 So.3d at 1127 (“Because a post-conviction court’s decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review.” (citing State v. Coney, 845 So.2d 120, 137 (Fla.2003))).
Claim that Mental Illness Bars Execution
Carroll first contends that his mental illness, which has been the subject of several court proceedings, places him within the class of persons, similar to those under age eighteen at the time of the crime and those with mental retardation, who are categorically excluded from being eligible for the death penalty. Carroll cites the principles set forth in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which held that the death penalty is unconstitutional for defendants who were under age eighteen at the time of the crime, and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that the death penalty is unconstitutional for mentally retarded defendants. Carroll contends that the principles set forth in these cases should be extended to the class of persons such as himself who suffer from mental illness, based on the precept that such persons are less morally culpable and that, under the “evolving standards of decency that mark the progress of a maturing society,” Trop v. Dulles, 356 U.S. 86, 100, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), their mental illnesses should bar their executions.
This claim is untimely and procedurally barred. Rule 3.851 requires in pertinent part that motions for postconviction relief must be filed within one year from when the conviction and sentence become final unless the claim is based on newly discovered evidence or a newly recognized fundamental constitutional right that has been held to apply retroactively. See Fla. R.Crim. P. 3.851(d)(l)(A)-(B); 3.851(d)(2)(A)-(B). We first note that Carroll’s claim that the rationale of Roper and Atkins, which bars execution of mentally retarded persons and those under age eighteen at the time of the murder, should be applied to mentally ill persons is not a claim based on a newly recognized, retroactive fundamental constitutional right that may be asserted beyond the time limits established in the rule. What Carroll is seeking is the recognition of a new fundamental constitutional right, which is not properly pled under rule 3.851(d)(2)(B). See, e.g., Waterhouse v. State, 82 So.3d 84, 97 (Fla.) (holding that a claim which does not rely on a case in which the right has previously been recognized does not satisfy any subdivision of rule 3.851(d)(2)), cert. denied, — U.S. -, 132 S.Ct. 1306, 181 L.Ed.2d 1035 (2012). Further, Carroll’s claim is based on evidence of his mental illness that was presented either at trial in 1992 or at the 1997 evidentiary hearing on his initial post-conviction motion. The Atkins case was decided in 2002 and Roper was decided in 2005. Thus, Carroll’s claim, even if proper under 3.851(d)(2)(B) seeking extension of Atkins and Roper, is procedurally barred because it could have been or was.raised on appeal or in other postconviction motions. See, e.g., Simmons v. State, 105 So.3d 475, 511 (Fla.2012) (rejecting as procedurally barred and on the merits a collateral claim of exemption from execution due to mental illness and neuropsychological deficits, based on Roper and Atkins, *887 because it could have been raised on appeal or in earlier postconviction motions). Moreover, Carroll did raise his claim concerning extension of Atkins to the mentally ill in his successive motion for postcon-viction relief that he filed in 2003. There, citing Atkins, Carroll contended that he was exempt from execution by reason of borderline mental retardation “and/or suffering from such severe brain damage and mental limitations that death could never be an appropriate punishment.” The circuit court recognized in its order that Carroll was asking that the principles of Atkins be extended to mentally ill persons and denied relief. This Court affirmed without discussion in Carroll v. State, 904 So.2d 430 (Fla.2005) (table).
Additionally, in his habeas corpus proceeding in federal court, Carroll claimed that he is mentally ill and, under the rationale of Atkins, persons who are unable to control their conduct due to mental illness act with lesser moral culpability and should be exempt from execution. The Eleventh Circuit Court of Appeals refused to extend Atkins to mentally ill persons absent a decision from the United States Supreme Court barring execution of the mentally ill. Carroll v. Sec’y, DOC, 574 F.3d at 1370. Thus, Carroll’s claim in this proceeding that he is less culpable because of his mental illness and should be treated similarly to the classes of persons protected by Atkins and Roper is procedurally barred.
Even if not untimely and procedurally barred, this Court has rejected similar claims on the merits in the past. See, e.g., Simmons, 105 So.3d at 511 (holding claim that persons with mental illness must be treated similarly to those with mental retardation due to reduced culpability to be without merit); Barwick v. State, 88 So.3d 85, 106 (Fla.2011) (rejecting on the merits “the argument that Roper extends beyond the Supreme Court’s pronouncement that the execution of an individual who was younger than eighteen at the time of the murder violates the eighth amendment”); Johnston v. State, 27 So.3d 11, 26 (Fla. 2010) (finding no merit in the claim that mentally ill persons are similar to and should be treated the same as juvenile murderers who are exempt from execution); Lawrence v. State, 969 So.2d 294, 300 n. 9 (Fla.2007) (rejecting assertion that the Equal Protection Clause requires extension of Atkins to the mentally ill due to their reduced culpability). For all these reasons, the circuit court properly denied Carroll’s claim.
Death Warrant Selection Process and Clemency Claim
Carroll next claims that the Governor’s power to select which death row prisoner for whom he will sign a death warrant is arbitrary, without standards, and without any process for review, thus rendering the death penalty unconstitutional. We have previously denied similar claims. See, e.g., Mann v. State, 112 So.3d 1158 (Fla.2013) (finding no merit in claim and no reason to recede from precedent rejecting claims that Governor’s unfettered discretion to select inmates for execution is unconstitutional); Ferguson v. State, 101 So.3d 362, 366 (Fla.) (holding based on precedent that circuit court properly denied claim that Governor’s selection process is unconstitutional), cert. denied, - U.S. -, 133 S.Ct. 497, 184 L.Ed.2d 312 (2012); Gore v. State, 91 So.3d 769, 779-80 (Fla.) (rejecting challenge to the Governor’s unfettered discretion under the Florida Rules of Executive Clemency and separation of powers doctrine), cert. denied, — U.S. -, 132 S.Ct. 1904, 182 L.Ed.2d 661 (2012); Valle v. State, 70 So.3d 530, 551-52 (Fla.) (holding that under the doctrine of separation *888 of powers it is not this Court’s prerogative to second-guess the executive in matters of clemency, thus rejecting claim that the Governor’s absolute discretion to sign death warrants renders Florida’s death penalty structure unconstitutional), cert. denied, — U.S. -, 132 S.Ct. 1, 180 L.Ed.2d 940 (2011); Marek v. State, 14 So.3d 985, 998 (Fla.2009) (rejecting constitutional challenge to the Governor’s authority to sign death warrants). Carroll has not presented any reason for the Court to recede from its precedent on this issue. Because Carroll’s claim is without merit, the circuit court properly denied relief.
Carroll also claims that the clemency process he received was conducted in an arbitrary and capricious manner in violation of the Eighth and Fourteenth Amendments to the federal constitution and in violation of the Florida constitution. Carroll contends that the clemency proceeding afforded him did not function as the “fail safe” envisioned in Harbison v. Bell, 556 U.S. 180, 192, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009).[3] However, Carroll’s motion acknowledges that he was provided a clemency hearing and that he was represented by counsel in that proceeding.
The clemency process in Florida derives solely from the Florida Constitution and we have recognized that the people of the State of Florida have vested “sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace.” Sullivan v. Askew, 348 So.2d 312, 315 (Fla.1977). Moreover, the warrant signed by Governor Scott states that “executive clemency for ELMER LEON CARROLL, as authorized by Article IV, Section 8(a), Florida Constitution, was considered pursuant to the Rules of Executive Clemency and it has been determined that executive clemency is not appropriate.” Thus, clemency was again considered by the executive prior to signing the warrant. See Johnston, 27 So.3d at 24 (noting, in rejecting clemency claim, that the death warrant stated that clemency had been considered by the executive branch prior to signing the warrant).
We have previously rejected similar challenges to the clemency process. In Pardo v. State, 108 So.3d 558, 568 (Fla.), cert. denied, — U.S. -, 133 S.Ct. 815, 184 L.Ed.2d 602 (2012), we rejected the clemency claim in large part because it is not this Court’s prerogative to second-guess the executive branch on matters of clemency in capital cases. In Johnston, we rejected an identical clemency claim and stated:
We also noted in Marek v. State, 14 So.3d 985 (Fla.2009), after Marek raised a second challenge to the clemency process, that “five justices of the United States Supreme Court concluded [in Ohio Adult Parole Authority v. Wood *889 ard, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) ] that some minimal procedural due process requirements should apply to clemency ... [b]ut none of the opinions in that case required any specific procedures or criteria to guide the executive’s signing of warrants for death-sentenced inmates.” Marek, 14 So.3d at 998. We again conclude that no specific procedures are mandated in the clemency process and that Johnston has been provided with the clemency proceedings to which he is entitled.
Johnston, 27 So.3d at 25-26 (emphasis added). See also Valle, 70 So.3d at 551 (rejecting claim that clemency proceeding did not serve the “fail safe” purpose for which clemency is intended); Rutherford v. State, 940 So.2d 1112, 1122-23 (Fla.2006) (denying a clemency claim because the defendant had a hearing and because clemency is an executive function); Bundy v. State, 497 So.2d 1209, 1211 (Fla.1986) (stating that it is not this Court’s “prerogative to second-guess the application of this exclusive executive function”).
Because Carroll’s motion admits that a clemency proceeding was held, and challenges only the sufficiency of it, and because we have refused based on the Florida Constitution to second-guess the executive branch on clemency matters in the past, Carroll’s claim is without merit and was properly denied by the circuit court.
Length of Time on Death Row
Carroll next claims that adding execution to the “inordinate length of time” he has spent on death row will constitute cruel and unusual punishment in contravention of the United States Constitution and binding norms of international law. Carroll cites as authority Justice Stevens’ comments in his memorandum respecting denial of certiorari in Lackey v. Texas, 514 U.S. 1045, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995), a case in which a prisoner unsuccessfully sought certiorari review on the question of whether executing a prisoner who has spent some seventeen years on death row violates the Eighth Amendment. Id. Justice Stevens noted that it was “arguable” that neither of the two social purposes of the death penalty — retribution and deterrence — retained any force for prisoners who spent lengthy stays on death row, and suggested that the issue would benefit from further study. Id. However, as this Court recognized in Par-do in 2012, “[N]o federal or state court has accepted the argument that a prolonged stay on death row constitutes cruel and unusual punishment, especially where both parties bear responsibility for the long delay.” Pardo, 108 So.3d at 569 (quoting Valle, 70 So.3d at 552 (quoting Tompkins v. State, 994 So.2d 1072, 1085 (Fla.2008))).
Moreover, this Court has repeatedly rejected similar claims that imposition of the death sentence after an extended period of time on death row constitutes cruel and unusual punishment or that it violates binding norms of international law. See, e.g., Pardo, 108 So.3d at 569 (rejecting claim that execution after twenty-four years on death row constitutes cruel and unusual punishment); Ferguson, 101 So.3d at 366-67 (rejecting claim that execution after over three decades of incarceration on death row constitutes cruel and unusual punishment); Gore, 91 So.3d at 780 (rejecting claim that adding execution to the twenty-three years spent on death row constitutes cruel and unusual punishment and violates “binding norms of international law”); Valle, 70 So.3d at 552 (rejecting claim that thirty-three years on death row constitutes cruel and unusual punishment); Johnston, 27 So.3d at 27-28 (Fla.2010) (rejecting claims that almost twenty-five years on death row renders execution of the death sentence unconstitutional and that such execution violates “binding norms of international law” (citing Elledge v. State, 911 So.2d 57, 77 (Fla.2005))); Lu *890 cas v. State, 841 So.2d 380, 389 (Fla.2003) (rejecting claim that over twenty-five years on death row constitutes cruel and unusual punishment); Foster v. State, 810 So.2d 910, 916 (Fla.2002) (rejecting claim that twenty-three years on death row constitutes cruel and unusual punishment); Booker v. State, 773 So.2d 1079, 1096 (Fla. 2000) (rejecting claim that execution after almost thirty years on death row constitutes cruel and unusual punishment and violates “binding norms of international law”).
Further, the length of time Carroll has spent on death row is due in large part to his postconviction motions and habeas petitions. As we have observed numerous times in the past, and most recently in Valle, Carroll “cannot now contend that his punishment has been illegally prolonged because the delay in carrying out his sentence is in large part due to his own actions in challenging his conviction[s] and sentence.” Valle, 70 So.3d at 552 (quoting Tompkins v. State, 994 So.2d 1072, 1085 (Fla.2008)). Carroll has provided nothing to cause the Court to depart from its well-established precedent on this issue. Thus, Carroll’s claim is without merit and was properly denied by the circuit court.
CONCLUSION
Based on the foregoing, we affirm the circuit court’s order denying Carroll’s successive motion for postconviction relief. No rehearing will be entertained by this Court and the mandate shall issue immediately.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. The claims Carroll raised in the circuit court in this proceeding were that: (1) he is exempt from execution because of severe mental illness; (2) the unfettered power given to the Governor to sign death warrants renders the capital sentencing scheme unconstitutional; (3) execution, when added to his twenty-one years on death row, would constitute cruel and unusual punishment; and (4) the clemency process was applied in an arbitrary and capricious manner in violation of the federal and Florida constitutions.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. Harbison recognized the importance of clemency proceedings as a “fail safe,” especially to death-sentenced prisoners, noting that it "is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriage of justice where judicial process has been exhausted.” Harbison, 556 U.S. at 192, 129 S.Ct. 1481 (quoting Herrera v. Collins, 506 U.S. 390, 411-12, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). The Supreme Court in Herrera recognized that the federal Constitution vests pardon power in the President but does not require the states to enact a clemency mechanism, although the states have generally done so. Herrera, 506 U.S. at 414, 113 S.Ct. 853. The Court in Herrera also explained that "the trial is the paramount event for determining the guilt or innocence of the defendant.” Id. at 416, 113 S.Ct. 853. However, the "traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency.” Id. at 417, 113 S.Ct. 853. It was in this context that the Supreme Court referred to clemency as a "fail safe.” Id. at 415, 113 S.Ct. 853.