# Supreme Court of Florida

————————

No. SC23-190

————————

**DONALD DAVID DILLBECK,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

————————

No. SC23-220

————————

**DONALD DAVID DILLBECK,**
Petitioner,

vs.

**RICKY D. DIXON, etc.,**
Respondent.

February 16, 2023

PER CURIAM.

Donald David Dillbeck, a prisoner under sentence of death and an active death warrant, appeals the circuit court's order summarily denying his fourth successive postconviction motion

filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We affirm the summary denial of Dillbeck's motion and deny his habeas petition. We also deny the two motions for stay of execution and two motions for oral argument that Dillbeck has filed in this Court.[1]

## I. BACKGROUND

Dillbeck was 15 years old when he committed his first murder by shooting Deputy Dwight Lynn Hall to death in 1979. He entered a negotiated guilty plea of first-degree premeditated murder and was sentenced to life in prison with the possibility of parole after 25 years. Eleven years later, Dillbeck murdered again:

> While serving his sentence [relating to Deputy Hall], he walked away from a public function he and other inmates were catering in Quincy, Florida. He walked to Tallahassee, bought a paring knife, and attempted to hijack a car and driver from a shopping mall parking lot on June 24, 1990. Faye Vann, who was seated in the car, resisted and Dillbeck stabbed her several times, killing her. Dillbeck attempted to flee in the car, crashed, and was arrested shortly thereafter and charged with first-degree murder, armed robbery, and armed burglary. He was convicted on all counts and sentenced to consecutive life terms on the robbery and burglary charges, and, consistent with the jury's eight-to-four recommendation, death on the murder charge.

---

1. We have jurisdiction, *see* art. V, § 3(b)(1), (9), Fla. Const.

*Dillbeck v. State*, 643 So. 2d 1027, 1028 (Fla. 1994).

In sentencing Dillbeck to death for Vann's murder, the trial court found five aggravating circumstances: "[1] that Dillbeck was under sentence of imprisonment and [2] had previously been convicted of another capital felony [Deputy Hall's 1979 murder], and [3] that the murder was committed during the course of a robbery and burglary, [4] was committed to avoid arrest or effect escape, and [5] was especially heinous, atrocious, or cruel." *Id.* at 1028 n.1 (citing § 921.141, Fla. Stat. (1989)). As to mitigation, "[t]he trial court found one statutory mitigating circumstance, i.e., that Dillbeck was substantially impaired, *see* § 921.141(6)(f), Fla. Stat. (1989), and numerous nonstatutory circumstances: abused childhood, fetal alcohol effect, mental illness, the mental illness is treatable, imprisonment at an early age in a violent prison, good-behavior, a loving family, and remorse." *Dillbeck*, 643 So. 2d at 1028 n.2.

On direct appeal, we affirmed Dillbeck's convictions and sentences, *id.* at 1031, which became final when the United States

Supreme Court denied certiorari review in 1995. *See Dillbeck v. Florida*, 514 U.S. 1022 (1995).

In the decades since, Dillbeck has unsuccessfully challenged his convictions and sentences many times. *See Dillbeck v. State*, 882 So. 2d 969, 977 (Fla. 2004) (denying Dillbeck's habeas petition and affirming the denial of one of Dillbeck's initial postconviction claims but remanding for the circuit court to make the required findings of fact and conclusions of law supporting denial of the remaining claims); *Dillbeck v. State*, 964 So. 2d 95, 97 (Fla. 2007) (affirming the denial of Dillbeck's remaining initial postconviction claims after remand); *Dillbeck v. State*, 168 So. 3d 224, *1 (Fla. 2015) (table) (affirming the denial of Dillbeck's first successive postconviction motion); *Dillbeck v. State*, 234 So. 3d 558, 559 (Fla.) (affirming the denial of Dillbeck's second successive postconviction motion), *cert. denied*, 139 S. Ct. 162 (2018); *Dillbeck v. State*, 304 So. 3d 286, 288 (Fla. 2020) (affirming the dismissal of Dillbeck's third successive postconviction motion), *cert. denied*, 141 S. Ct. 2733 (2021).

Governor Ron DeSantis signed Dillbeck's death warrant on January 23, 2023. Dillbeck then filed his fourth successive

postconviction motion under rule 3.851.  In his motion, Dillbeck

argued that he is exempt from execution because he has a mental

condition that is equivalent to intellectual disability, that newly

discovered evidence related to the prior violent felony aggravator

requires vacating his death sentence or granting a stay of execution,

and that the Eighth Amendment prohibits his execution after 30

years on death row.  Dillbeck conceded below that the claim based

on his length of time on death row presents a purely legal issue but

sought an evidentiary hearing on his claims alleging an exemption

from execution and newly discovered evidence.  The circuit court

summarily denied all three claims.[2]

Dillbeck now appeals, petitions this Court for a writ of habeas

corpus, moves for a stay of execution, and requests oral argument.

## II. ANALYSIS OF APPEAL

In appealing the circuit court's summary denial of his fourth

successive postconviction motion, Dillbeck raises three issues: (1)

the circuit court erred in summarily denying his claim that he is

---

    2.  Dillbeck also challenged the constitutionality of his
clemency proceedings below, but he does not appeal the circuit
court's summary denial of that claim.

exempt from execution because he has a mental condition that is equivalent to intellectual disability; (2) the circuit court erred in summarily denying his claim that newly discovered evidence related to the prior violent felony aggravator requires vacating his death sentence or, at minimum, staying his execution to allow him to challenge the 1979 conviction that supports the prior violent felony aggravator; and (3) the Eighth Amendment precludes executing him after 30 years on death row. Because the circuit court denied these claims without an evidentiary hearing, our review is de novo. *See Bowles v. State*, 276 So. 3d 791, 794 (Fla. 2019) ("A postconviction court's decision regarding whether to grant an evidentiary hearing is a pure question of law and is reviewed de novo."); *see also* Fla. R. Crim. P. 3.851(f)(5)(B) (providing for the summary denial of a successive postconviction motion "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief"). As explained below, we affirm the circuit court's summary denial of all three claims.

## (1) Exemption from Execution

Dillbeck first argues that the circuit court erred in summarily denying his claim that he is exempt from execution because he has

a mental condition that is equivalent to intellectual disability. Dillbeck has an average IQ of 98 to 100, but he has been diagnosed with a fetal alcohol spectrum disorder called neurodevelopmental disorder associated with prenatal alcohol exposure (ND-PAE). He relies on an alleged newly emerged medical and scientific consensus that ND-PAE is equivalent to intellectual disability to argue that the Eighth and Fourteenth Amendments require exempting him from execution.

The circuit court properly summarily denied Dillbeck's exemption claim. As a newly discovered evidence claim of intellectual disability, it is untimely and procedurally barred; if it is not a newly discovered evidence claim (and Dillbeck says that it is not), then it is not cognizable in a successive postconviction motion. Moreover, the claim is meritless.

This Court has explained that an intellectual disability claim that is based on newly discovered evidence must be filed "within one year of the date upon which the claim became discoverable through due diligence." *Pittman v. State*, 337 So. 3d 776, 777 (Fla. 2022); *see also Bowles*, 276 So. 3d at 794 (affirming summary denial of untimely intellectual disability claim).

Dillbeck's claim depends on his ND-PAE diagnosis. But three years ago, in 2020, we affirmed the dismissal of Dillbeck's third successive postconviction motion as untimely because we held that Dillbeck and his counsel had failed to diligently pursue a diagnosis of ND-PAE:

> Dillbeck and his counsel knew that Dillbeck had brain damage related to fetal alcohol exposure even before he was sentenced in 1991. Thus, . . . a diagnosis of ND-PAE and qEEG [quantitative electroencephalogram] results . . . could have been discovered by the exercise of due diligence as early as 2013, when ND-PAE became a diagnosable condition. Dillbeck and his counsel failed to exercise diligence by waiting until 2018 to pursue evaluation, testing, and a diagnosis of ND-PAE.

*Dillbeck*, 304 So. 3d at 288. This claim is therefore barred.

Attempting to avoid the procedural bar of our 2020 decision and establish due diligence in bringing his exemption claim, Dillbeck argues that his exemption claim is not based on the same evidence from his third successive postconviction proceeding, but on a "sociolegal tipping point" that ND-PAE is the equivalent of intellectual disability that is happening now, in 2023. Even if our prior ruling did not procedurally bar him, Dillbeck's claim still comes too late to be newly discovered evidence.

- 8 -

Dillbeck cites a 2021 article for the proposition that the medical and scientific community view ND-PAE as equivalent to intellectual disability, and that article in turn relies on older sources. "[N]ew opinions or research studies based on a compilation or analysis of previously existing data and scientific information" are not generally considered newly discovered evidence. *Henry v. State*, 125 So. 3d 745, 750 (Fla. 2013). But even if they could be, the record conclusively refutes that Dillbeck diligently pursued an exemption claim based on them. The alleged new scientific and medical consensus that undergirds Dillbeck's claim has existed since at least 2021.

Another timing problem for Dillbeck is that if his exemption claim is not a newly discovered evidence claim, which he repeatedly says it is not, then the claim is not cognizable at all in a successive postconviction motion. "Rule 3.851 requires in pertinent part that motions for postconviction relief must be filed within one year from when the conviction and sentence become final unless the claim is based on newly discovered evidence or a newly recognized fundamental constitutional right that has been held to apply

- 9 -

retroactively." *Carroll v. State*, 114 So. 3d 883, 886 (Fla. 2013) (citing Fla. R. Crim. P. 3.851(d)(1)(A)-(B); 3.851(d)(2)(A)-(B)).

In *Carroll*, a capital defendant under an active death warrant argued that mental illness barred his execution, specifically that "the principles set forth in [*Atkins* and *Roper*[3]] should be extended to the class of persons such as himself who suffer from mental illness, based on the precept that such persons are less morally culpable and that, under the 'evolving standards of decency that mark the progress of a maturing society,' their mental illnesses should bar their executions." 114 So. 3d at 886 (citation omitted). In explaining why Carroll's claim was untimely and therefore unauthorized in a rule 3.851 successive postconviction motion, this Court wrote:

> Carroll's claim . . . is not a claim based on a newly recognized, retroactive fundamental constitutional right that may be asserted beyond the time limits established in the rule. What Carroll is seeking is the recognition of a new fundamental constitutional right, which is not properly pled under rule 3.851(d)(2)(B).

*Id.*

---

3. *Atkins v. Virginia*, 536 U.S. 304 (2002); *Roper v. Simmons*, 543 U.S. 551 (2005).

Likewise, if Dillbeck's claim is not a newly discovered evidence claim subject to the time and due diligence limitations of rule 3.851(d)(2)(A), then it is not cognizable in a rule 3.851 successive postconviction motion. *Carroll* flatly refutes Dillbeck's contention that no time limits apply to categorical exemption claims based on conditions alleged to have intellectual disability equivalence.

The time and procedural bars discussed above are fatal to Dillbeck's exemption claim, but even if they were not, the claim is also meritless. We have long held that the categorical bar of *Atkins* that shields the intellectually disabled from execution does not apply to individuals with other forms of mental illness or brain damage. *See Gordon v. State*, 350 So. 3d 25, 37 (Fla. 2022) ("[F]or the purposes of the Eighth Amendment, the existence of a traumatic brain injury does not reduce an individual's culpability to the extent they become immune from capital punishment."). The result is the same even where, as here, the defendant argues that "his mental illness and neurological impairments . . . cause him to experience the same deficits in reasoning, understanding and processing information, learning from experience, exercising good judgment, and controlling impulses as those experienced" by the

intellectually disabled. *Johnston v. State*, 27 So. 3d 11, 26 (Fla. 2010); *see also Carroll*, 114 So. 3d at 886.

Because Dillbeck's exemption claim is time barred, procedurally barred, and without merit, we affirm the circuit court's summary denial.

### (2) Newly Discovered Evidence

Next, Dillbeck argues that the circuit court erred in summarily denying his claim that newly discovered evidence related to the prior violent felony aggravator requires vacating his death sentence or, at minimum, staying his execution to allow him to challenge the 1979 conviction that supports the prior violent felony aggravator. We disagree and affirm the summary denial of this claim.

To obtain relief where alleged newly discovered evidence relates to the penalty phase, "a defendant must establish: (1) that the newly discovered evidence was unknown by the trial court, by the party, or by counsel at the time of trial and it could not have been discovered through due diligence, and (2) that the evidence is of such a nature that it would probably . . . yield a less severe sentence on retrial." *Dailey v. State*, 329 So. 3d 1280, 1285 (Fla. 2021).

- 12 -

After describing the alleged new evidence, we explain why Dillbeck's newly discovered evidence claim is untimely and why we agree with the circuit court's alternative ruling that even if the claim is timely, the alleged new evidence is not of such a nature that it would probably yield a less severe sentence on retrial. Last, we explain why Dillbeck is not entitled to a stay of execution to challenge his 1979 conviction.

*The Alleged New Evidence*

After the Governor signed Dillbeck's death warrant, Dillbeck's legal team obtained statements from five people who witnessed his "bizarre" behavior surrounding Deputy Hall's 1979 shooting. Of the five, three gave prior statements to law enforcement in 1979; a fourth is married to one of the people who gave a statement in 1979. The fifth witness saw Dillbeck being arrested in 1979 after the shooting but was not interviewed by law enforcement. In addition to the five witness statements, Dillbeck's legal team obtained a post-warrant statement from Dillbeck's childhood friend to help contextualize Dillbeck's "bizarre" behavior surrounding Deputy Hall's shooting.

Then, Dillbeck's legal team gave the post-warrant witness statements to two doctors who reviewed them and offered new opinions about Dillbeck's mental state. Dillbeck argues that the doctors' new opinions prove that his capacity was diminished during the prior murder, that he was insane at the time of the prior murder, and that he was incompetent to plead guilty to the prior murder.

Finally, in response to the State's argument below that Dillbeck's detailed 1979 plea colloquy evinced his mental state, Dillbeck's legal team obtained a statement from the assistant public defender who met with Dillbeck on the day he was arrested but did not otherwise have contact with him. Dillbeck argues that the attorney's affidavit shows that his plea colloquy contains inaccurate representations because he answered affirmatively when asked if he had discussed the facts of the case with her, but she does not recall doing so. He also argues that this statement supports his new doctors' reports questioning whether he was competent to plead guilty because it shows he had been primed to say "yes" during the colloquy.

*The Claim is Untimely*

We agree with the circuit court that Dillbeck's newly discovered evidence claim is "decades late." Rule 3.851(d)(2)(A) precludes filing a postconviction claim based on newly discovered evidence more than one year after the conviction and sentence of death become final unless "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." *See also* Fla. R. Crim. P. 3.851(e)(2) (requiring good cause for failing to assert successive claims earlier). "It is incumbent upon the defendant to establish the timeliness of a successive postconviction claim." *Mungin v. State*, 320 So. 3d 624, 626 (Fla. 2020).

In attempting to avoid the time bar, Dillbeck argues that due diligence only requires reasonable efforts. He contends that nothing in the 1979 witness statements would have given him or his counsel reason to know that there were third-party witnesses to his bizarre behavior who could shed light on his mental state at the time of the 1979 shooting. We disagree.

- 15 -

Dillbeck himself detailed his behavior during the shooting in his 1979 plea colloquy and again during his 1991 penalty phase testimony. It is also beyond dispute that there were witnesses who saw and even interacted with Dillbeck at the beach around the time of Deputy Hall's shooting. Some of the statements taken in 1979 refer to other people who were present on the beach, so it is clear that law enforcement did not take statements from everyone and that there were other potential witnesses to question. Moreover, the 1979 witness statements contain observations about Dillbeck's behavior: one witness stated that Dillbeck "[s]eemed like he was kinda depressed"; another said that Dillbeck was "pacing so hard an[d] . . . he looked like he was messed up." Similarly, the arresting officer's 1979 statement described Dillbeck as "bewildered." Whether any of the witnesses at the beach, who were either expressly named or discoverable by due diligence, might have been able to describe Dillbeck's behavior in a way that could have potentially aided him in advancing claims about his mental state is a question that diligent counsel would ask—particularly as Dillbeck's mental state has been a feature of his claims for 30-plus years. Because counsel inquired "decades late," we affirm the

summary denial of Dillbeck's newly discovered evidence claim as untimely.

*The "New" Evidence Would Not Probably Yield a Lesser Sentence*

We also agree with the circuit court's alternative ruling that even if Dillbeck's claim were timely, he would still not be entitled to relief from his death sentence because the "new" evidence is not of such nature that it would probably yield a less severe sentence on retrial. *See Dailey*, 329 So. 3d at 1285.

The circuit court cogently explained why Dillbeck cannot make the necessary showing:

> Five aggravators were proven in this case: (1) under sentence of imprisonment; (2) murder committed during a robbery/burglary; (3) murder committed to avoid arrest/effect escape; (4) murder was especially heinous, atrocious, or cruel; and (5) prior violent felony for the first-degree murder of Deputy Hall. *Dillbeck*, 643 So. 2d at 1028 n.1. Dillbeck proved the following mitigation: (1) he was substantially impaired under § 921.141(6)(f), Florida Statutes (1989); (2) childhood abuse; (3) fetal alcohol effects; (4) treatable mental illness; (5) imprisonment at an early age in a violent prison; (6) good behavior; (7) a loving family; and (8) remorse. *Id.* at n.2. Overall, little weight was given to this mitigation by the [trial court].
> . . . Dillbeck's new evidence (at most) shows he was acting oddly before and after he killed Deputy Hall and that two doctors, who have evaluated this evidence in 2023, doubt his competence to plead guilty and form premeditated intent in 1979. That barely alters the

profile of the aggravating and mitigating circumstances, especially considering intent was litigated extensively in 1991 [in the Vann murder case], his 1979 plea colloquy [for Deputy Hall's murder] was introduced to the [Vann penalty-phase] jury, and the State would still be able to use the non-vacated 1979 conviction to prove the prior violent felony aggravator.

Accordingly, because Dillbeck's newly discovered evidence claim is untimely and, moreover, because the alleged new evidence would not probably yield a less severe sentence, we affirm the circuit court's summary denial.

*Dillbeck is Not Entitled to a Stay of Execution*

Dillbeck also argues that the circuit court should have granted a stay of execution to allow him to challenge his 1979 conviction. He acknowledges that the circuit court correctly ruled that his attempt to invalidate the prior violent felony aggravator is not cognizable. Indeed, *Johnson v. Mississippi*, 486 U.S. 578, 584-85 (1988), requires "reexamination of [a] death sentence" only where the death sentence is "based in part on a reversed conviction." Because Dillbeck's 1979 conviction stands, *Johnson* provides no avenue to invalidate the prior violent felony aggravator that is based on his 1979 conviction.

- 18 -

Yet Dillbeck argues that the circuit court erred by denying his *Johnson* claim without first giving him the chance to use the alleged new evidence to invalidate his 1979 conviction. He is wrong that the circuit court needed to hold open the *Johnson* claim, and he is also wrong that the circuit court erred in denying a stay.

In challenging the denial of his *Johnson* claim, Dillbeck points to no authority that supports holding open an unripe *Johnson* claim based on speculation that it might become cognizable. To the contrary, many cases do say that "[p]ostconviction relief cannot be based on speculative assertions." *Jones v. State*, 845 So. 2d 55, 64 (Fla. 2003). And others generally recognize that a "concession that [an] issue is not yet ripe" means "th[e] claim is without merit." *Kimbrough v. State*, 886 So. 2d 965, 984 (Fla. 2004) (addressing premature claim of competency for execution).

Of course, Dillbeck may challenge, and he does challenge, the circuit court's denial of his motion for stay of execution. But that argument also fails because "a stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted." *Davis v. State*, 142 So. 3d 867, 873-74 (Fla. 2014) (citing *Buenoano v. State*,

708 So. 2d 941, 951 (Fla. 1998)). Belated attacks on a conviction that has been final for over 40 years fall well short of the necessary showing, particularly where the proposed vehicle for those attacks is a newly discovered evidence claim under rule 3.850 that cannot meet the applicable due-diligence requirement. *See* Fla. R. Crim. P. 3.850(b)(1).

Accordingly, we affirm the circuit court's summary denial of Dillbeck's *Johnson* claim and its denial of a stay of execution.

### (3) Length of Time on Death Row

In his third and last issue on appeal, Dillbeck argues that the circuit court erred in denying his claim that executing him after 30 years on death row violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. We disagree and affirm, consistent with our longstanding precedent that such claims are "facially invalid," including when the defendant's stay on death row exceeded 30 years. *Valle v. State*, 70 So. 3d 530, 552 (Fla. 2011) (33 years); *see also Lambrix v. State*, 217 So. 3d 977, 988 (Fla. 2017) (over 31 years); *Long v. State*, 271 So. 3d 938, 946 (Fla. 2019) (over 30 years).

"[N]o federal or state court has accepted the argument that a prolonged stay on death row constitutes cruel and unusual punishment." *Booker v. State*, 969 So. 2d 186, 200 (Fla. 2007). And Dillbeck's arguments about conditions on death row do not persuade us that our precedent is "clearly erroneous." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020); *see also Muhammad v. State*, 132 So. 3d 176, 207 (Fla. 2013) (holding that "the fact that [the defendant] was placed in special solitary confinement after murdering a correctional officer while on death row does not provide a sufficient distinguishing basis for this Court to depart from its established precedent" repeatedly rejecting the claim that "adding execution to the lengthy period of time . . . served on death row constitutes cruel and unusual punishment").[4]

---

4. Dillbeck argues that the conditions on death row amount to "solitary confinement" prohibited by the original meaning of the Cruel and Unusual Punishments Clause. In rejecting this argument below, the circuit court looked to the original meaning of "solitary confinement"—i.e., "complete isolation of the prisoner from all human society" and confinement in a cell such that "he had no direct intercourse with or sight of any human being," *In re Medley*, 134 U.S. 160, 167-68 (1890). And then the circuit court compared those conditions to the "access to multimedia kiosks . . . telephones, . . . and outdoor exercise" available to Florida death row inmates, *Davis v. Dixon*, No. 3:17-CV-820-MMH-PDB, 2022 WL 1267602, at *3 (M.D. Fla. Apr. 28, 2022). We decline to hold that

Moreover, because Dillbeck has "contributed to the lengthy time and delay by continually challenging his convictions and sentences," he " 'cannot now contend that his punishment has been illegally prolonged.' " *Lambrix*, 217 So. 3d at 988 (quoting *Valle*, 70 So. 3d at 552). Dillbeck has been on death row since 1991; his convictions and sentences became final in 1995, and litigation on his initial postconviction motion did not end until 2007. In the time when Dillbeck asserts there was no impediment to the issuance of his death warrant—i.e., from 2013 when his clemency proceedings concluded until 2023 when the Governor signed his death warrant—Dillbeck continued to challenge his convictions and sentences through *three* successive postconviction motions.

We affirm the circuit court's denial of this claim.

### III. ANALYSIS OF HABEAS PETITION

In his habeas petition, Dillbeck challenges (1) the lack of a unanimous jury recommendation for death; (2) the HAC aggravator;

---

the circuit court erred in refusing to expand the original meaning of a term to justify a claim that we have repeatedly held is not cognizable under the Eighth Amendment.

- 22 -

and (3) the effecting-escape aggravator. None of his claims warrant relief, and we deny his habeas petition.

## (1) Jury Recommendation

In his first habeas claim, Dillbeck argues that executing him would violate the Eighth Amendment because his jury did not unanimously recommend a death sentence. But we have already rejected Dillbeck's Eighth Amendment challenge to his death sentence, including for lack of juror unanimity as to the recommended sentence. *See Dillbeck*, 234 So. 3d at 559.

And we are "bound by Supreme Court precedents that construe the United States Constitution," and the Supreme Court's precedent establishes that the Eighth Amendment does not require a unanimous jury recommendation of death. *Poole*, 297 So. 3d at 504. The Supreme Court "rejected th[e] exact argument . . . that the Eighth Amendment requires a unanimous jury recommendation of death" in *Spaziano v. Florida*, 468 U.S. 447, 465 (1984). *Poole*, 297 So. 3d at 504. To the extent that our prior decision rejecting Dillbeck's Eighth Amendment challenges to his death sentence does not foreclose relief, *Spaziano* is still good law and requires denying Dillbeck's claim.

## (2) HAC Aggravator

Dillbeck next argues that the HAC aggravator is facially invalid because it is vague, overbroad, and fails to serve the narrowing function required by the United States Constitution so that it was fundamental error to apply the aggravator in his case. This claim is procedurally barred and meritless.

"[H]abeas corpus 'is not a second appeal and cannot be used to litigate or relitigate issues which could have been . . . or were raised on direct appeal.'" *Deparvine v. State*, 146 So. 3d 1071, 1108 (Fla. 2014) (quoting *Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992)). On direct appeal, Dillbeck unsuccessfully challenged the HAC aggravator. *Dillbeck*, 643 So. 2d at 1028 n.3, 1031 n.6. He cannot challenge it again now.

Moreover, the Court has consistently rejected as "without merit" challenges that the HAC aggravator is "overbroad, vague, and fail[s] to narrow the class of persons eligible for the death penalty." *Card v. State*, 803 So. 2d 613, 628 (Fla. 2001); *see also Cruz v. State*, 320 So. 3d 695, 731 (Fla. 2021) ("declin[ing] to revisit" precedent "rejecting as meritless the argument that the jury instruction on HAC is unconstitutionally vague") (citing *Gilliam v.*

*State*, 582 So. 2d 610, 612 (Fla. 1991)); *Colley v. State*, 310 So. 3d 2, 16 (Fla. 2020) ("declin[ing] to revisit" precedent rejecting the argument that "the HAC aggravator [is] unconstitutionally vague and overbroad") (citing *Victorino v. State*, 23 So. 3d 87, 104 (Fla. 2009)).

Dillbeck is not entitled to habeas relief on this claim.

### (3) Effecting-Escape Aggravator

In his third and last habeas claim, Dillbeck argues that the effecting-escape aggravator is invalid because the evidence is insufficient to prove that his primary motive in killing Vann was elimination of a witness to avoid detection. He also argues that manifest injustice would result if the Court does not overturn its prior decision holding this claim is procedurally barred.

On direct appeal, Dillbeck unsuccessfully challenged the escape aggravator, *see Dillbeck*, 643 So. 2d at 1031, but he did not raise the motive-based argument at issue here. Rather, Dillbeck raised his motive-based challenge for the first time in his first successive postconviction motion, and we held it is "procedurally barred." *Dillbeck*, 168 So. 3d 224, at *1.

We reject Dillbeck's argument that enforcing the procedural bar would result in "manifest injustice." *State v. Akins*, 69 So. 3d 261, 268 (Fla. 2011) (quoting *Muehleman v. State*, 3 So. 3d 1149, 1165 (Fla. 2009)). Even if Dillbeck had timely raised his motive-based challenge to the escape aggravator, and even if he had succeeded in having the aggravator stricken, any error would be harmless beyond a reasonable doubt in light of the four other aggravators in his case, which include the HAC and prior violent felony aggravators that "are among the most serious aggravators." *Buzia v. State*, 82 So. 3d 784, 800 (Fla. 2011); *see also Aguirre-Jarquin v. State*, 9 So. 3d 593, 608 (Fla. 2009) ("Even if the witness elimination aggravator were stricken, there would still be a nine-to-three jury recommendation for the death penalty along with several other aggravators, including heinous, atrocious, or cruel (HAC) [and] prior violent felony[.]"), *receded from on other grounds by Hooks v. State*, 286 So. 3d 163, 170 (Fla. 2019).

We deny habeas relief as to this claim.

## IV. CONCLUSION

For the above reasons, we affirm the circuit court's summary denial of Dillbeck's fourth successive postconviction motion. We

also deny Dillbeck's habeas petition and his pending motions for stay of execution and oral argument.

No rehearing will be entertained by this Court, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

LABARGA, J., concurring in result.

In *State v. Poole*, 297 So. 3d 487 (Fla. 2020) (receding in part from this Court's decision in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016)), I strongly dissented on the issue of unanimity in jury recommendations of death, and I adhere to my dissent today.

However, even before this Court's decision in *Poole*, including in *Dillbeck v. State*, 234 So. 3d 558, 559 (Fla. 2018), this Court consistently held that the *Hurst* unanimity requirement did not apply retroactively to sentences of death that became final before the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002). *See, e.g., Hitchcock v. State*, 226 So. 3d 216, 217 (Fla. 2017); *Lambrix v. State*, 227 So. 3d 112, 113 (Fla. 2017).

Consequently, I concur in the result.

- 27 -

An Appeal from the Circuit Court in and for Leon County,
    Angela C. Dempsey, Judge
      Case No. 371990CF002795AXXXXX
And an Original Proceeding – Habeas Corpus

Linda McDermott, Chief, Capital Habeas Unit, Office of the Federal
Public Defender, Northern District of Florida, Tallahassee, Florida;
and Baya Harrison of Baya M. Harrison, P.A., Monticello, Florida,

    for Appellant/Petitioner

Ashley Moody, Attorney General, Charmaine M. Millsaps, Senior
Assistant Attorney General, and Jason W. Rodriguez, Assistant
Attorney General, Tallahassee, Florida,

    for Appellee/Respondent